UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF VISALIA,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>MISSION LINEN SUPPLY, INC., a California corporation, and DOES 1-100 inclusive,<br><br>　　　　Defendant | CASE NO. 1:19-CV-1809 AWI EPG<br><br>ORDER ON PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO DISMISS AND ORDER REMANDING MATTER TO THE TULARE COUNTY SUPERIOR COURT<br><br>(Doc. Nos. 5, 13) |

　　This action was removed from the Tulare County Superior Court on December 30, 2019, and was related to *Mission Linen, Inc. v. City of Visalia*, 1:15-CV-0672 AWI EPG, a CERCLA case.  In this case, Plaintiff the City of Visalia ("the City") seeks a declaration that remediation projects at a property contaminated with perchloroethylene ("PCE"), and subject to a remediation order by the California Department of Toxic Substances Control ("DTSC"), are subject to the competitive bidding procedures mandated by the California Public Contracts Code and the City Charter.  Currently before the Court is Defendant Mission Linen Supply, Inc. ("Mission")'s motion to dismiss and the City's motion to remand.  For the reasons that follow, the City's motion will be granted, and Mission's motion will be denied without prejudice to refiling in state court.

## BACKGROUND

　　On February 5, 2019, following a bench trial, this Court issued a Findings of Fact and

Conclusions of Law ("February 5 Order") pursuant to Rule 52(a)(1) in *Mission Linen, Inc. v. City of Visalia*, 1:15-CV-0672 AWI EPG ("the *Mission Linen* Case").  See Doc. No. 176 in Case 1:15-CV-0672 AWI EPG.  The *Mission Linen* Case involved PCE contamination of property owned by Mission.  See id.  Mission was obligated under a consent order by the DTSC to cooperate and to remediate the PCE plume/the property.  See id.  PCE contamination was the result of dry-cleaning activities that had been conducted by Mission and its predecessor.  See id.  Although PCE had not been used on the subject property since 1986, the Court found that PCE had spread beyond the property's borders.  See id.  The PCE plume coincided with the City's sewer systems, which contained a number of defects that permitted the PCE to "escape" into the environment.  See id.  The Court concluded that Star Laundry (an insolvent predecessor entity that was not a party), Mission, and the City were potentially responsible parties under CERCLA for the PCE plume.  See id.  After dividing the orphan share of Star Laundry, the Court found that Mission and the City were each 50% liable for future response costs.  See id.  The Court specifically declared, "For all necessary future response costs incurred by Mission regarding the PCE plume, Mission is responsible for 50% of those future costs and the City is responsible for 50% of those future costs."[1]  Id.  The City has appealed this order, but an opinion from the Ninth Circuit has not yet issued.  Therefore, the Court's Findings and Conclusions and declarations made in the February 5 Order remain controlling and in place.

In late November 2019, the City filed a complaint for declaratory relief in the Tulare County Superior Court.  See Doc. No. 1 at Exhibit A ("the Complaint").  The complaint alleges that remediation expenses for the property have been estimated between $3 and $5 million.  See id. at ¶ 5.  The complaint states that the "City does not by this action challenge or otherwise ask for a different allocation; that issue was determined and is being reviewed in the Courts of the United States.  Regardless of the outcome of its appeal, City is informed and believes that its share of costs for the cleanup will exceed $25,000.  This action has [sic] seeks no relief from or under [the February 5 Order]."  Id.  The Complaint alleges that whether Mission puts the remediation project to bid, the bid will not be public but will be steered towards preferred contractors.  See id.

---

[1] The Court also declared that the City was responsible for 100% of any necessary repair costs to the sewer system.

at ¶ 12. The Complaint explains that, on information and belief, Mission intends to award a bid for the initial phases of the cleanup to one of three contractors as part of a process that did not place the project out to public bid. See id. at ¶ 13. The contract will require payment of public funds in excess of the minimum required to trigger the application of the California Public Contracts Code. See id. The Complaint avers that Mission intends to award all future work on the cleanup in a similar manner, i.e. inviting bids from favored contractors on a project that involves public works and public funds but without a public bid. See id. at ¶ 14. Under the cause of action for declaratory relief, the Complaint states that the February 5 Order is an instrument on which Mission Linen seeks to hold the City liable to pay public moneys for a share of all work on the cleanup of the PCE plume. See id. at CA ¶ 2.[2] The Complaint then explains that an "actual controversy has arisen regarding the rights and obligations of the parties with respect to one another regarding their properties and as those rights and obligations affect a watercourse [groundwater under the property]: City alleges that the cleanup is a public works project subject to the competitive bidding procedures of the Public Contracts Code and the Charter of the City of Visalia." CA ¶ 3. Mission denies that it must follow the rules of the Public Contracts Code and the City Charter. CA ¶ 4. "A declaration of the rights and duties of these parties in the premises is necessary, requiring a determination of whether the cleanup work to be paid in part by City is subject to competitive bidding procedures of the Public Contracts Code." CA ¶ 5. The Complaint prays for costs, attorneys' fees, and "an order declaring that the cleanup for which City is in part obligated to pay under the February 5 Order are subjected to the competitive bidding processes of the Public Contracts Code and the [City Charter] and must be put out for bid as they require." Complaint's Prayer.

Mission removed the matter to this Court on the basis of federal question jurisdiction. Specifically, Mission removed because the Complaint allegedly is a collateral attack on the February 5 Order and implicates CERCLA's exclusivity provisions.

---

[2] The allegations under the first cause of action begin their numbering anew, the first paragraph being identified as Paragraph 1. The Court will refer to paragraphs under the first cause of action as "CA ¶".

**I.    CITY'S MOTION TO REMAND**

*Plaintiff's Arguments*

The City argues that it is not making a collateral attack on the February 5 Order since the Complaint does nothing to change the fact that the City has been ordered to pay 50% of the cleanup costs. The Complaint expressly states that it seeks no relief from or under the February 5 Order, and the City recognizes that, depending on the appeal to the Ninth Circuit, it will be on the hook for some amount of the cleanup. Further, the Complaint does not challenge whether a cleanup of the property at issue will occur. There is neither a direct nor indirect attack on the February 5 Order. The Complaint simply asks the California Court to determine whether the California Public Contracts Code applies to work done on an environmental cleanup happening on public and private land in California, part of which is to be paid by a California public entity. The City states that it only needs to know, before paying potentially millions of public dollars, whether state laws ordinarily governing such expenditures should apply to the remediation costs. The question is not whether the February 5 Order is valid or invalid, the question posed by the City is whether California cities can use local businesses as proxies to hire other companies to do public projects without following the California Public Contracts Code? The February 5 Order does not address this question. Because there is no collateral attack on the February 5 Order, remand is proper, and attorneys' fees should be awarded under 28 U.S.C. § 1447(c).

*Defendant's Opposition*

Mission argues that this case is a collateral attack on the February 5 Order because, before paying any money, the City needs to know whether Mission must comply with the California Public Contracts Code as a prerequisite to enforcing the CERCLA Judgment against the City. The Complaint seeks relief from, interpretation of, further provisions, or modification of the February 5 Order. Paragraph 2 of the Complaint's Prayer seeks declaratory relief for a dispute under the judgment, which has the effect of writing additional provisions into the February 5 Order by requiring Mission to comply with the Public Contracts Code. That is, the City seeks a declaration that enlarges the criteria under which Mission can recover its CERCLA response costs.

Mission argues that the declaration sought by the City impacts the implementation of the

February 5 Order and turns on the application of state and local rules to the federal CERCLA statute. Resolution and analysis of the Complaint will require the interpretation of both the February 5 Order and CERCLA, as this declaratory action has the effect of acting as a defense to a CERCLA judgment. The Complaint essentially asks another court to address whether and how the City is responsible under the February 5 Order. However, similar issues are already pending before the Court in the *Mission Linen* Case through a motion to enforce the February 5 Order. If the Court were to grant the motion to remand, conflicting results between the state court and this Court's order on the pending motion to enforce judgment could result. This Court has the jurisdiction to enforce and give effect to its orders, to permit a state court to do so would waste judicial resources and create the possibility of inconsistent rulings. Additionally, even if the Court grants the City's motion, attorney's fees should not be awarded because the removal was fairly supportable.

### *Legal Standard*

"The right of removal is entirely a creature of statute . . . ." Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002). The removal statute (28 U.S.C. § 1441) is strictly construed against removal jurisdiction. Corral v. Select Portfolio Servicing, Inc., 878 F.3d 770, 773 (9th Cir. 2017); Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010); see also Syngenta, 537 U.S. at 32. It is presumed that a case lies outside the limited jurisdiction of the federal courts, and the burden of establishing the contrary rests upon the party asserting jurisdiction. Corral, 878 F.3d at 773; Geographic Expeditions, 599 F.3d at 1106-07. "The strong presumption against removal jurisdiction means that the court resolves all ambiguity in favor of remand to state court." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). That is, federal jurisdiction over a removed case "must be rejected if there is any doubt as to the right of removal in the first instance." Geographic Expeditions, 599 F.3d at 1107; Gaus, 980 F.2d at 566. "If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); Kenny v. Wal-Mart Stores, Inc., 881 F.3d 786, 789 n.2 (9th Cir. 2018). Remand under 28 U.S.C. § 1447(c) "is mandatory, not discretionary." Bruns v. NCUA, 122 F.3d 1251, 1257 (9th

Cir. 1997). District courts "must remand if [they] lacks jurisdiction." Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir. 2003); see Kenny, 881 F.3d at 789.

28 U.S.C. § 1331 describes "federal question jurisdiction" and provides that district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Vaden v. Discover Bank, 556 U.S. 49, 60 (2009); Rainero v. Archon Corp., 844 F.3d 832, 836-37 (9th Cir. 2016). The presence or absence of federal question jurisdiction is governed by the '"well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Rainero, 844 F.3d at 837; California v. United States, 215 F.3d 1005, 1014 (9th Cir. 2000). The well-pleaded complaint rule does not permit a finding of jurisdiction "predicated on an actual or anticipated defense," or "upon an actual or anticipated counterclaim." Vaden, 556 U.S. at 60; Hornish v. King Cty., 899 F.3d 680, 688 (9th Cir. 2018). Federal question jurisdiction most directly and often exists "when federal law creates the cause of action asserted." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, 136 S.Ct. 1562, 1569 (2016); Hornish, 899 F.3d at 687. Under the artful plead rule, a "plaintiff may not defeat removal by omitting to plead necessary federal questions." Hansen v. Group Health Coop., 902 F.3d 1051, 1057 (9th Cir. 2018). As part of the artful pleading doctrine, federal question jurisdiction will exist in a "small category of cases" in which a state law claim "necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state power." Manning, 136 S.Ct. at 1570; Hornish, 899 F.3d at 687. Also part of the artful pleading rule, federal question jurisdiction can be found under the "complete preemption doctrine," in which "federal law not only preempts a state law cause of action, but also substitutes an exclusive federal cause of action in its place." Hansen, 902 F.3d at 1057. Additionally, the Ninth Circuit has recognized that federal question jurisdiction will exist over a state law action where the action is a collateral attack on a federal court judgment, i.e. when the state action seeks to "obtain relief from a federal judgment . . . ." Eyak Native Village v. Exxon Corp., 25 F.3d 773, 778 (9th Cir. 1994).

*Discussion*

There is no diversity jurisdiction in this case, and no cause of action seeks to recover under a federal law. Mission bases its removal and the existence of federal question jurisdiction primarily on the theory that the Complaint represents a collateral attack on the February 5 Order. Mission relies on *Eyak* and a Fifth Circuit case, *Baccus v. Parrish*, 45 F.3d 958 (5th Cir. 1995),[3] to show a collateral attack. Mission also argues that the Complaint implicates the Court's exclusive CERCLA jurisdiction. The Court understands this latter argument as one that implicates the "exclusive original jurisdiction" provision of CERCLA § 9613(b). The Court will examine these two potential bases for jurisdiction separately.

1.  Collateral Attack

In *Eyak*, the Ninth Circuit held that a reply brief in a state court action attacked a federal consent decree as fraudulently obtained. See Eyak, 25 F.3d at 777-79. That attack in the reply brief transformed the state action into an independent action for relief under Federal Rule of Civil Procedure 60(d)(1). See id. (noting that Rule 60(b) "has a savings clause that preserves a court's power to entertain an independent action in equity to obtain relief from judgment: a motion may be treated as an independent action in equity, or vice versa."). *Eyak* then cited two Fifth Circuit cases, *Villareal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir. 1976) and *Deauville Assocs., Inc. v. Lojoy Corp.*, 181 F.2d 5 (5th Cir. 1950), for the proposition that "an action to obtain relief from a federal judgment presents a general federal question, which may support removal to federal court." Id. at 778. Therefore, because the reply filed in the state action transformed the state action into a Rule 60(d)(1) independent action that attacked the federal consent decree as fraudulently obtained, federal question jurisdiction existed and removal was proper. See id. at 777-79.

In *Villareal*, a personal injury matter related to a traffic accident was settled in federal court, and the case was dismissed with prejudice. See Villareal, 529 F.2d at 1220. The plaintiff then filed a suit in state court ostensibly for the conversion of one tire that had been destroyed in

---

[3] The Court notes that the Fifth Circuit has questioned on several occasions *Baccus*'s continued precedential value. Energy Mgmt. Servs., LLC v. City of Alexandria, 739 F.3d 255, 261 (5th Cir. 2014); 1994 Exxon Chem. Fire v. Berry, 558 F.3d 378, 391-92 (5th Cir. 2009); Texas v. Real Parties In Interest, 259 F.3d 387, 394 n.10 (5th Cir. 2001).

7

1  the accident. See id. at 1220-21.  The matter was removed to federal court and the district court
2  refused to remand. See id. at 1221.  The Fifth Circuit held that the case was actually one "to
3  recover additional damages for personal injuries, and can be viewed as an action which attacks the
4  order of dismissal entered by the district court in the [prior federal suit]." Id.  The claimed
5  damages were actually based on the fraudulent concealment, not conversion, of the tire. See id.
6  The Fifth Circuit held that the avenue for relief based on fraud from a judgment is Rule 60(b). See
7  id.  "If the independent action is brought in a state court, it may be removed to the appropriate
8  federal court on the basis of a general federal question." Id. (citations omitted).  Because the state
9  case was actually a Rule 60(b) independent action alleging fraud, removal was appropriate. Id.

10        In *Deauville*, a federal court entered an order that awarded property to a party.  See
11 Deauville, 181 F.2d at 5.  The plaintiff, dissatisfied with the federal award, filed an action in state
12 court that sought to circumvent and nullify the federal award by relitigating matters that had
13 already been finally determined in the federal case. See id.  On appeal, the Fifth Circuit held that
14 removal of the state case was proper because federal question jurisdiction existed. See id. at 6.
15 *Deauville* cited South Dakota C. R. Co. v. Continental & Comm'l Trust & Savings Bank , 255 F.
16 941 (8th Cir. 1919), which in relevant part held that "an attack upon a decree of a national court
17 raises a federal question."  South Dakota, 255 F. at 944.

18        Finally, in *Baccus*, a federal court entered a settlement in a class action lawsuit involving
19 the closure of schools for special needs students. See Baccus, 45 F.3d at 959.  A state court case
20 challenged a state task force that had been created by the Texas legislature in response to the
21 federal settlement and charged with making recommendations regarding the closure of two special
22 needs schools; the state action also challenged the appointment of a member to the task force.  See
23 id.  After the state case was removed, the district court declined to remand. See id. at 960.  In
24 relevant part, the Fifth Circuit recognized that federal jurisdiction is "proper where a claim
25 brought in state court seeks to attack or undermine an order of a federal district court."  Baccus, 45
26 F.3d at 960.  The *Baccus* court found that the state action would affect the task force and cause the
27 federal settlement to unravel, which was sufficient to support federal question jurisdiction. See id.
28 at 960-61.  Recently, the Fifth Circuit case has indicated that *Baccus*'s "attack or undermine"

language is implicated when the state action seeks to "attack, unravel, or set aside" a federal settlement agreement or order.  See Energy Mgmt. Servs., LLC v. City of Alexandria, 739 F.3d 255, 261 (5th Cir. 2014).[4]

Here, there are no allegations of fraud being made by the City.  Nor is there any other Rule 60 ground for relief that the City is expressly or impliedly pursuing, such that this case may be considered a Rule 60(d) "independent action."  Therefore, this case is not like *Eyak* or *Villareal*.

With respect to *Deauville*, there is a similar problem.  The Complaint expressly states that it is not attempting to challenge or seek relief from the February 5 Order.  A review of the Complaint supports that assertion.  There is no challenge to the 50% liability determination.  Nor does the Complaint seek to overturn or attack any of the express findings of fact, conclusions of law, or declarations made in the February 5 Order.  The February 5 Order was a detailed CERCLA determination, the primary purpose of which was to determine who would pay what percentage of future necessary response costs.  A number of findings and conclusions were made to resolve CERCLA related issues, including the extent of the PCE plume, who was a potentially responsible party, and what percentage of future necessary remediation expenses would be paid by each potentially responsible party.  What was not addressed or considered by the Court was whether any necessary remediation projects or costs would be subject in any way to the public bidding procedures of the California Public Contracts Code or the City Charter.  It is that issue, the applicability of public contract bidding requirements to the remediation projects, that is the subject of this Complaint.  Therefore, unlike *Deauville*, this case does not attack any findings or otherwise seek to relitigate any findings actually made or issues actually resolved in the February 5 Order.

Finally, the Court cannot conclude that this case is like *Baccus*.  As discussed above, this Complaint does not attack any findings, conclusions, or declarations in the February 5 Order.  In one sense, the Complaint arguably undermines the efficient cleanup/remediation of the property and the ease with which Mission can collect 50% of any further necessary response costs. However, there are two points that undercut the argument that *Baccus*'s "undermine" doctrine

---

[4] *Energy Mgmt.* recognized that prior Fifth Circuit cases questioned whether *Baccus* remained good law, but ultimately did not determine the issue because the facts of the case did not fit within the holding of *Baccus*.  See Energy Mgmt., 739 F.3d at 261-62.

1 applies. First, the primary purpose of the February 5 Order was to set responsibility/liability for
2 future necessary response costs. The February 5 Order was not intended to, and did not, settle all
3 potential disputes regarding the remediation project (including bidding procedures) or the funds to
4 be expended on the cleanup project. For example, while the February 5 Order sets liability for
5 future necessary response costs, it does not settle or address whether a particular expenditure will
6 be "necessary." See New York v. Green, 420 F.3d 99, 111 (2d Cir. 2005); United States v. USX
7 Corp., 68 F.3d 811, 819 n.17 (3d Cir. 1995); Kelley v. E.I. DuPont De Nemours & Co., 17 F.3d
8 836, 845 (6th Cir. 1994). Therefore, it is not clear that the Complaint actually undermines the
9 February 5 Order. Second, and more importantly, as discussed above, the Fifth Circuit does not
10 appear to read the term "undermine" in a broad sense. *Energy Mgmt. Servs.* viewed *Baccus* as
11 being implicated when a state court litigant seeks to attack, unravel, or set aside a federal judgment
12 or order. 739 F.3d at 261. Again, the Complaint does not attempt to obtain relief from any aspect
13 of the February 5 Order. The Complaint also does not attempt to somehow set aside the judgment
14 so that the City is not bound by it. The Complaint expressly states that the February 5 Order is
15 currently in place and that the City will be bound by either the February 5 Order or a future federal
16 order issued from, or in conformity with, the Ninth Circuit. Finally, it cannot be said that the
17 Complaint is an attempt to unravel the February 5 Order. Nothing about the Complaint will
18 change the 50/50 liability determination on the parties (or the 100% sewer repair determination on
19 the City) for liability for future necessary response costs. Therefore, the Court cannot conclude
20 that *Baccus*, as clarified by *Energy Mgmt.*, demonstrates a federal question in this case.

21 In sum, the cases cited by or implicated by Mission's arguments are distinguishable. The
22 Complaint does not question any finding or declaration made in the February 5 Order, the
23 Complaint does not indicate that fraud or any other Rule 60 basis for relief applies, and the
24 Complaint expressly states that it recognizes the February 5 Order and seeks no relief from it.
25 Therefore, the Court concludes that the Complaint is not a "collateral attack" on the February 5
26 Order, as envisioned by *Eyak*, *Baccus*, *Villareal*, and *Deauville*.

27     2. CERCLA Exclusivity
28     The doctrine of "complete preemption" does not apply to CERCLA because "CERCLA

does not completely occupy the field of environmental regulation." ARCO Envtl. Remediation, LLC v. Department of Health & Envtl. Quality, 213 F.3d 1108, 1114 (9th Cir. 2000).  However, CERCLA § 113(b) confers on federal district courts "exclusive original jurisdiction over all controversies arising under CERCLA." 42 U.S.C. § 9613(b); ARCO Envtl., 213 F.3d at 1115. Further, except for five exceptions not relevant her, CERCLA § 113(h) provides that "[n]o federal court shall have jurisdiction under federal law other than [diversity jurisdiction] . . . to review any challenges to removal or remedial action selected under [CERCLA § 104], or to review any order issued under [CERCLA § 106] . . . ." 42 U.S.C. § 9611(h).  The Ninth Circuit has read § 113(b) coextensively with § 113(h), and thus, views jurisdiction under § 113(b) as "'more expansive than . . . those claims created by CERCLA,' and 'covers any 'challenge' to a CERCLA cleanup.'" ARCO Envtl., 213 F.3d at 1115 (quoting Fort Ord Toxics Project, Inc. v. California Envtl. Protection Agency, 189 F.3d 828, 832 (9th Cir. 1999)).  Therefore, state law claims are "necessarily federal claims under § 113(b) only if they constitute a challenge to a CERCLA cleanup." ARCO Envtl., 213 F.3d at 1115.  That is, removal of a purely state law case can be supported through § 113(b) if the state law claims challenge a CERCLA cleanup. See id. at 1113, 1115-16; Lehman Bros., Inc. v. City of Lodi, 333 F.Supp.2d 895, 906 (E.D. Cal. 2004).  "An action constitutes a challenge to a CERCLA cleanup 'if it is related to the goals of the [CERCLA] cleanup.'" Id. at 1115 (quoting Razore v. Tulalip Tribes of Wa., 66 F.3d 236, 239 (9th Cir. 1995)).

Assuming without deciding that the Complaint constitutes a "challenge to a CERCLA cleanup," *ARCO Envtl.*'s discussion of CERCLA §§ 113(b) and 113(h) is no longer valid. Recently, the Supreme Court examined CERCLA §§ 113(b) and 113(h). See Atlantic Richfield v. Christian, 2020 U.S. LEXIS 2405 (Apr. 20, 2020).  In *Christian*, 98 Montana property owners, who were within the boundaries of a CERCLA Superfund site involving a copper smelter, brought suit in state court asserting various state law claims related to pollution damage to their property. See id. at *13.  Part of the damages sought were restoration damages, which were meant to restore the owners' property to the property's condition prior to pollution from the smelter. See id. at *13-*14.  The restoration plan of the plaintiffs was more expansive, stricter, and more costly (by

11

1  an additional $50 to $58 million) than a CERCLA approved cleanup plan for the Superfund site.
2  See id. at *14. Atlantic Richfield moved to dismiss the suit based on the argument that CERCLA
3  § 113 stripped the state court of jurisdiction. See id. at *15. The district court denied Atlantic
4  Richfield's argument and held that it had jurisdiction. See id. The Montana Supreme Court
5  affirmed this decision. See id. at *15-*16. The Supreme Court granted certiorari and affirmed
6  that CERCLA § 113 did not strip the Montana state court of jurisdiction. See id. at *18.

7  　　　　In relevant part, *Christian* held that CERCLA § 113(b)'s grant of exclusive original
8  jurisdiction was akin to the grant of jurisdiction in 28 U.S.C. § 1331. Id. at *18. Because the
9  claims brought by the Montana property owners were brought exclusively under Montana law,
10 they were not CERCLA claims. See id. "As a result, the Montana courts retain jurisdiction over
11 this lawsuit, notwithstanding the channeling of Superfund claims to federal courts in § 113(b)."
12 Id. *Christian* expressly rejected the argument that CERCLA § 113(h) broadened the reach of
13 CERCLA § 113(b) to preclude state court jurisdiction. See id. at *18-*23. *Christian* found that
14 the language of CERCLA § 113(h) referred to "federal courts," not state courts. See id. at *19.
15 "There is not textual basis for Atlantic Richfield's argument that Congress precluded *state* courts
16 from hearing a category of cases in § 113(b) by stripping *federal* courts of jurisdiction over those
17 cases in § 113(h)." Id. Instead, "Section 113(b) deprives state courts of jurisdiction over cases
18 'arising under' [CERCLA] – just as it says – while § 113(h) deprives federal courts of jurisdiction
19 over certain 'challenges' to Superfund remedial actions – just as it says." Id. at *20. *Christian*
20 also noted that Atlantic Richfield's view of CERCLA §§ 113(b) and 113(h) did not account for §
21 113(h) permitting federal courts sitting in diversity to entertain state law claims regardless of
22 whether the state claims challenged cleanup plans. See id. "[CERCLA] permits federal courts
23 and state courts alike to entertain state law claims, including challenges to cleanups." Id.
24 Ultimately, the Supreme Court concluded: "Sections 113(b) and 113(h) thus each do work
25 independent of one another. The two provisions overlap in a particular type of case: challenges to
26 cleanup plans in federal court that arise under [CERCLA]. In such cases, the exceptions clause in
27 § 113(b) instructs that the limitation in § 113(h) prevails." Id. at *22-*23.

28 　　　　In sum, *Christian* clarifies that CERCLA §§ 113(b) and 113(h) do not work together to

12

"federalize" state law claims, even if those state law claims may constitute a "challenge" to a CERCLA cleanup. See id. at *18-*23. Thus, *Christian* invalidates the analysis of *ARCO Envtl*.

Applying *Christian* to this case, the Complaint is brought entirely under state law. It seeks a state court declaration regarding the applicability of a state code and a municipal charter. The Complaint does not bring any claims under CERCLA. Therefore, pursuant to *Christian*, CERCLA § 113(b) does not apply and cannot strip jurisdiction from the Tulare County Superior Court. See id.

### 3. Conclusion

In the removal context, there is a presumption against jurisdiction and all doubt is resolved in favor of remand. See Geographic Expeditions, 599 F.3d at 1106-07; Hunter, 582 F.3d at 1042. Here, the Complaint contains no CERCLA cause of action. Therefore, CERCLA § 113(b) has no effect on this case. Further, the Complaint does not sufficiently fit the factual patterns or analyses of *Baccus*, *Eyak*, *Villareal*, and *Deauville* for the Court to conclude that the Complaint is a "collateral attack" on the February 5 Order, or that the Complaint seeks to attack, unravel, or set aside any finding, conclusion, or declaration of the February 5 Order. Therefore, the Court's doubts about removal have not been adequately dispelled. Under these circumstances, remand for lack of subject matter jurisdiction is mandatory. See 28 U.S.C. § 1447(c); Kelton Arms, 346 F.3d at 1192; Bruns, 122 F.3d at 1257.

### 4. Attorneys' Fees

Under 28 U.S.C. § 1447(c), the Court may require payment of attorneys' fees and costs incurred as a result of an improper removal. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); Chan Healthcare Group, PS v. Liberty Mut. Fire Ins. Co., 844 F.3d 1133, 1141 (9th Cir. 2017). "[R]emoval is not objectively unreasonable because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008).

Here, the Court cannot say that Mission had no objectively reasonable basis for removal.

Mission has a legitimate concern over the possible effects of this case on its ability to conduct a cleanup of the PCE contamination at the property (as ordered by the DTSC) and to collect the 50% share of necessary response costs from the City (as ordered by this Court). Nevertheless, the Court has found that the cases relied on by Mission are distinguishable and its arguments were not quite enough to resolve all reasonable doubt with respect to subject matter jurisdiction. The Court's rejection of Mission's argument does not alone justify imposition of fees and costs. Therefore, fees and costs will not be awarded to the City. See Lussier, 518 F.3d at 1065.

## II.     Motion to Dismiss

The Court has determined that it must remand this matter due to a lack of subject matter jurisdiction. See Bruns, 122 F.3d at 1257. Without jurisdiction, the Court cannot substantively address Mission's motion to dismiss. Instead, the Court will administratively deny the motion to dismiss without prejudice to refiling in state court.

## ORDER

Accordingly, IT IS HEREBY ORDERED that;

1. Plaintiff's motion to remand (Doc. No. 13) is GRANTED;
.2  This case is REMANDED forthwith to the Tulare County Superior Court; and
3. Defendant's motion to dismiss (Doc. No. 5) is DENIED without prejudice to refiling in the Tulare County Superior Court.

IT IS SO ORDERED.

Dated:   May 19, 2020                         _____
                                              SENIOR DISTRICT JUDGE